**Allon DURKES, Craig Boyer, and Glennis Douglass, Appellants–Plaintiffs,**

**v.**

**TOWN OF CONVERSE, Indiana; Town Board of the Town of Converse, Indiana; Howard Leap, Ralph Worline, Jerry Walls, Steve Dooley, and Stephen L. Pullman, individually and as members of said Board; Board of Aviation Commissioners of the Town of Converse, Indiana; Max Anderson, Norman Schaaf, Greg Wornock, and Jim Martin, individually and as members of said Board, Appellees–Defendants.**

No. 52A04–9011–CV–532.

Court of Appeals of Indiana,
Fourth District.

June 6, 1991.

Frederic C. Sipe, Sipe, Pankow, Han & Free, Indianapolis, James A. Berkshire, Peru, for appellants-plaintiffs.

Patrick J. Roberts, Roberts & Stanley, Peru, for appellees-defendants.

CONOVER, Judge.

Defendants–Appellants Durkes, Boyer, and Douglass (Collectively, Farmers) appeal the trial court's grant of summary judgment in favor of the Town of Converse

and Board of Aviation Commissioners (Board).

We affirm.

Plaintiffs present one issue for our review:

whether the Board of Aviation Commissioners may transfer jurisdiction of a portion of airport land to the Converse Town Council.

The United States of America deeded a rectangular parcel of real estate to the Town of Converse for use as an airport in 1947. In the spring of 1989, the Converse Board of Aviation Commissioners requested the Federal Aviation Administration (F.A.A.) to release 42.12 acres used by the Converse Airport from aeronautical to non-aeronautical use and also to release that area from industrial use restrictions contained in the 1947 deed. The release would allow the parcel to be used as income producing property. The F.A.A. granted the request. The plaintiffs, farmers who own and farm lands adjoining the airport, filed their action contending the Board and the town were attempting to create an industrial park on the airport lands and such attempt was *ultra vires* the powers of such officials. They demanded injunctive, declaratory, and monetary relief.

On October 4, 1989, the Board of Aviation Commissioners voted to release jurisdiction over that tract to the Town Council, subject to the approval of the F.A.A.[1] Later that month, the Town Council requested the F.A.A. to approve the release of jurisdiction of the 42.12 acre tract and enacted a resolution accepting jurisdiction of the parcel subject to F.A.A. approval. In November, 1989, the F.A.A. approved the release.

On March 23, 1990, the farmers filed an amended complaint which asked for a declaration that the Board of Aviation Commissioners lacked the power to transfer jurisdiction of that portion of the lands of Converse Airport to the Town Board. In June, 1990, the farmers filed a motion for partial summary judgment, and the town filed its response. The Court granted summary judgment to the Board. Subsequently, the farmers filed a motion to reconsider, which was overruled. The farmers appeal.

They contend the trial court erred in granting summary judgment in favor of the Board and Town because the Board did not have statutory authority to transfer jurisdiction of that parcel of land to the Town of Converse. We disagree.

On appeal from a summary judgment, we must determine whether the record reveals a genuine issue of material fact when viewed in a light most favorable to the non-moving party and whether the trial court correctly applied the law. *Schrader v. Mississinewa Community School Corp.* (1988), Ind.App., 521 N.E.2d 949, 952, *trans. denied.* Summary judgment will be affirmed if it is sustainable upon any theory supported by the record. *Kolczynski v. Maxton Motors, Inc.* (1989), Ind.App., 538 N.E.2d 275, 276, *reh. denied, trans. denied.*

The issue here does not involve any factual dispute, but is strictly a matter of statutory construction.

In determining whether power to release jurisdiction exists, we look first to the statutes. When construing statutes, this court is bound by rules of statutory construction. *City of Wabash v. Wabash Cty. Sheriff's D.* (1990), Ind.App., 562 N.E.2d 1299, 1300. The rules which guide us in this decision include the following: When interpreting a statute, the statute is to be construed as a whole, giving words their common and ordinary meaning and not overemphasizing strict literal or selective reading of individual words. *Avco Financial Services of Indianapolis* (1990), Ind.App., 563 N.E.2d 1323, 1328, *reh. denied.* In construing statutes, the Court of Appeals's goal is to give effect to the intent of the legislature. *Hamilton County Dept. of Public Welfare v. Smith* (1991), Ind.App., 567 N.E.2d 165, 169. Legislative enactments cannot be presumed to be applied in an illogical or absurd manner inconsistent with the legislation's underlying goals. *Boyle v. Kosciusko County* (1991), Ind.App., 565 N.E.2d

---

1. The Board is empowered to construct a revenue producing building located on the airport pursuant to IC 8–22–2–18. However, the Town Council may apply and be eligible for economic development grants, funds, and bond issues which the Board may not qualify to receive.

1157, 1159. Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme. *May v. Department of Natural Resources, State of Ind.* (1991), Ind.App., 565 N.E.2d 367, 371.

■ IC 8–22–2–5 gives exclusive power to manage and control municipal airports and landing fields to the Board of Aviation Commissioners. All incidents of ownership of the land pass to the Board, except title which remains with the town. IC 8–22–2–5(b) provides that the "Board, on behalf of the eligible entity, *exclusively* has the following powers...." (Emphasis supplied). The issue is whether this statute limits the powers of the Board detailing the only powers it possesses, or whether it does not limit the powers, but lists those powers held by the Board exclusively.[2]

The farmers contend the Board, exclusive of any other entity, has certain enumerated powers given to it under IC 8–22–3–1, *et seq.*, and no other public entity can exercise those powers even under the broad powers given governmental units pursuant to the home rule statutes, IC 36–1–3–1, *et seq.*[3]

They rely on IC 36–1–3–5 which provides in pertinent part:

"A unit may exercise any power it has to the extent that the power ... is not expressly granted to another entity."

Therefore, they posit, since the legislature granted the Board the power to manage airports, the Board does not have the power to disclaim or release such power. Neither does the Town Council under its home rule powers have authority to accept or exercise such power, the farmers contend.

After a careful reading of the relevant statutes, we find no such limitation. We look to the act as a whole, rather than one isolated word. *Avco Financial Services, supra.*

The general intent of the legislature is to give the Board far reaching powers to manage airport lands. The Board here has determined the land at issue is unnecessary to the airport for either the present or the foreseeable future. IC 8–22–2–8 gives the Board the power to sell part or the whole airport.[4] IC 8–22–2–16 provides for transfer of certain Board funds to the town general fund.[5] Theoretically, these statutes would allow the Board to sell the land to the town, who could outbid any other bidder because the sale proceeds could go from the Board back to the town to cover the purchase price. Requiring the Board to put up the land for sale so the town could purchase it would be both a useless and absurd requirement.

The farmers argue the Board cannot sell land to Converse because the town owns the title already. However, retention of the title is not dispositive. Under IC 8–22–2–8, the fact that the town retains title does not prevent the Board from selling the land. Therefore, the Board may sell the land to the town if both units comply with IC 8–22–2–8.

IC 36–1–11–1, *et seq.*, provides specific procedures for the disposal of property by

**2.** Exclusive is defined as having power to exclude or limiting control to a single individual or organization. Webster's New International Dictionary (1976).

**3.** The home rule chapter IC 36–1–3–1, *et seq.*, applies to all units except townships. IC 36–1–3–1. A unit is defined as county, municipality, or township. IC 36–1–2–23. A board is not a unit under home rule.

**4.** IC 8–22–2–8 reads:

If the board wishes to sell part or the whole of the aviation land or improvements owned by the eligible entity, it may prepare an ordinance authorizing the sale and submit it to the fiscal body of the entity. If the fiscal body passes the ordinance, the land or improvements shall be sold as other lands or improvements of the aviation fund of the entity.

**5.** IC 8–22–2–16 reads:

Whenever the board of an eligible entity accumulates funds that are derived from sources other than from the operation of the airport and that are not needed for the operation or maintenance of the airport, the board, upon a majority vote of its members, may without notice transfer all or part of the funds to the general fund of the entity if the funds were not derived from taxation. This section does not apply to funds derived from lands leased from the federal government.

political subdivisions and their agencies. IC 36–1–11–8 provides that a governmental entity may transfer or exchange property upon terms agreed upon by the entities.[6]

The farmers argue the statute only allows an exchange of real property, not a transfer of jurisdiction or power. Specifically, the farmers contend the Board cannot transfer property, which it does not own, to the town, which already owns it.

Pursuant to IC 8–22–2–5, the Board may acquire, improve, maintain, lease, control, and regulate the airport and landing fields without the town council's approval even though the town technically retains the title to the airport. Since the town has no authority over the property, it makes little difference that legally it retains title. It is unreasonable to argue while the airport may sell the property and while governmental entities may exchange property, the Board, however, is unable to release its jurisdiction over surplus property.

Additionally, the farmers contend that an exchange or transfer contemplates consideration, not a gift. However, IC 36–1–11–8 provides: "Such a transfer may be made for *any amount* of real property, cash, or other personal property, *as agreed upon by the entities.*" (Emphasis supplied). This statute does not require the consideration be fair or the exchange even. The transfer depends only upon the agreement of the parties.[7]

The court is to prevent absurdity and hardship and to favor the public convenience when interpreting a statute. *State ex. rel. Stream Pollution Control Bd. v. Town of Wolcott* (1982), Ind.App., 433

N.E.2d 62, 65. The trial court did not err. It is apparent when reading the statutes as a whole the Board possessed the power to make the transfer of the land as it did here.

Affirmed.

CHEZEM, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

The Town owns the land. The Board only controls it for airport purposes. While the Board may not have the power to abdicate its responsibility to control, operate and maintain the airport facility, it has inherent authority, subject to approval by the F.A.A., to relinquish "control" over lands not needed for airport purposes.

When control is relinquished to the Town, that control merges with title to the land. I discern no public policy or statutory prohibition against such action.

---

6. IC 36–1–11–8 provides:

A transfer or exchange of property may be made with a governmental entity upon terms and conditions agreed upon by the entities as evidenced by adoption of substantially identical resolution by each entity. Such a transfer may be made for any amount of real property, cash, or other personal property, as agreed upon by the entities.

7. Both the farmers and the Board raise a public policy argument urging their respective intended use of the land would be the most beneficial to the community as a whole. Whatever the merits of each argument, we have no need to address them in this action after careful examination of all the statutes involved.

